FILED

2019 SEP -5  PM 2: 07

1  NICOLA T. HANNA
   United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   PAUL G. STERN (Cal. Bar No. 162734)
4  Assistant United States Attorney
   Senior Trial Attorney
5  Environmental and Community Safety Crimes Section
   ASHWIN JANAKIRAM (Cal. Bar No. 277513)
6  Assistant United States Attorney
   Major Frauds Section
7  ANDREW M. ROACH (Cal. Bar No. 293375)
   Assistant United States Attorney
8  General Crimes Section
   TYLER A. STUTIN (Cal. Bar No. 306019)
9  Special Assistant United States Attorney
   Environmental and Community Safety Crimes Section
10      1300 United States Courthouse
        312 North Spring Street
11      Los Angeles, California 90012
        Telephone: (213) 894-0715
12      Facsimile: (213) 894-6269
        E-mail:   Paul.stern@usdoj.gov
13                Ashwin.janakiram@usdoj.gov
                  Andrew.roach@usdoj.gov
14                Tyler.stutin@usdoj.gov

15 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

16

17              UNITED STATES DISTRICT COURT

18          FOR THE CENTRAL DISTRICT OF CALIFORNIA

19 UNITED STATES OF AMERICA,           No. CR 19-00509 -MWF

20          Plaintiff,                 PLEA AGREEMENT FOR DEFENDANT
                                       DIAS CONTAINER CARRIER S.A.
21          v.

22 DIAS CONTAINER CARRIER S.A.

23          Defendant.

24

25      1.   This constitutes the plea agreement between DIAS CONTAINER

26 CARRIER S.A. ("defendant") and the United States Attorney's Office

27 for the Central District of California ("the USAO") in the above-

28 referenced matter.  This agreement is limited to the USAO and cannot

1 | bind any other federal, state, local, or foreign prosecuting,
2 | enforcement, administrative, or regulatory authorities.

3 | 2. The parties understand and agree that this agreement is
4 | part of a "package deal" ("the deal") in which the disposition of the
5 | case against defendant is tied to and conditioned on the disposition
6 | of the case against Capital Ship Management Corp ("Capital") in
7 | United States v. Capital Ship Management Corp., et al., Case No. 19-
8 | CR-354-VAP (C.D. Cal.). Accordingly, defendant and the USAO agree
9 | that this Agreement and the obligations it creates will not become
10 | binding on the USAO and defendant unless and until by no later than
11 | September 9, 2019: (a) defendant executes this Agreement, enters a
12 | guilty plea, and initiates a transfer of the monetary penalty
13 | specified in this agreement; and (b) the USAO executes a non-
14 | prosecution agreement with Capital, following which all criminal
15 | charges against Capital will be dismissed in the interest of
16 | justice. Defendant acknowledges that defendant has discussed with
17 | defendant's attorney, and carefully considered, the possible
18 | advantages and disadvantages to defendant of entering into this
19 | Agreement as part of the deal; defendant is entering into this
20 | Agreement freely and voluntarily because defendant believes this to
21 | be in defendant's best interests; and defendant is not entering
22 | into this Agreement because of threats, coercion, or other undue
23 | influence.

24 | ### RULE 11(c)(1)(C) AGREEMENT

25 | 3. Defendant understands that this agreement is entered into
26 | pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).
27 | Accordingly, defendant understands that, if the Court determines that
28 | it will not accept this agreement, absent a breach of this agreement

by defendant prior to that determination and whether or not defendant elects to withdraw any guilty plea entered pursuant to this agreement, this agreement will, with the exception of paragraph 20 below, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement.  Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 22 and 23 below, will control, with the result that defendant will not be able to withdraw any guilty plea entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty plea.

<div align="center">DEFENDANT'S OBLIGATIONS</div>

**4.**    Defendant agrees to:

a.    Give up the right to indictment by grand jury and, at the earliest mutually convenient opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Failing to Maintain an Accurate Oil Record Book while in United States Waters, in violation of 33 U.S.C. § 1908(a), 33 C.F.R. §§ 151.25(d), (j), (h), 18 U.S.C. § 2.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to this court that it impose sentence in accordance with paragraph 13 of this agreement.

1        d.    Appear for all court appearances, obey all conditions
2   of any bond, and obey any other ongoing court order in this matter.

3        e.    Not commit any crime; however, offenses that would be
4   excluded for sentencing purposes under United States Sentencing
5   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
6   within the scope of this agreement.

7        f.    Be truthful at all times with Pretrial Services, the
8   United States Probation Office, and the Court.

9        g.    Pay the applicable special assessment at or about the
10  time of sentencing unless otherwise provided by the Court.

11       h.    Pursuant to 33 U.S.C. § 1908(a), not oppose a
12  recommendation by the USAO or a Court order that an amount equal to
13  no more than half of any fine imposed by the Court be paid to the
14  person or persons giving information leading to any conviction in
15  connection with the underlying investigation.  The names of those
16  individuals will be lodged with the Court under seal.

17       i.    Defendant and its agents will not file or otherwise
18  initiate any claim, lawsuit, or other action under 33 U.S.C.
19  § 1904(h) arising out of or related to the conduct described in the
20  agreed-to factual basis attached hereto as Exhibit B.

21                        THE USAO'S OBLIGATIONS

22  5.   The USAO agrees to:

23       a.    Not contest facts agreed to in this agreement.

24       b.    Abide by all agreements regarding sentencing contained
25  in this agreement and affirmatively recommend to the court that it
26  impose sentence in accordance with paragraph 13 of this agreement.

27       c.    Except for criminal tax violations (including
28  conspiracy to commit such violations chargeable under 18 U.S.C.

                              4

1  § 371), not further criminally prosecute defendant for violations
2  arising out of defendant's conduct described in the agreed-to factual
3  basis set forth in Exhibit B.  Defendant understands that the USAO is
4  free to criminally prosecute defendant for any other unlawful past
5  conduct or any unlawful conduct that occurs after the date of this
6  agreement.  Defendant agrees that at the time of sentencing the Court
7  may consider the uncharged conduct in determining the applicable
8  Sentencing Guidelines range, the propriety and extent of any
9  departure from that range, and the sentence to be imposed after
10 consideration of the Sentencing Guidelines and all other relevant
11 factors under 18 U.S.C. § 3553(a).

12                         COMPANY AUTHORIZATION

13      6.    Defendant represents that it is authorized to enter into
14 this agreement.  On or before the change of plea hearing pursuant to
15 this agreement, defendant shall provide the USAO and the Court with a
16 corporate resolution signed by a company representative for defendant
17 certifying that defense counsel is authorized to enter into and
18 comply with all of the provisions of this agreement.  Such documents
19 shall, at a minimum, designate a company representative who is
20 authorized to take the actions specified in this agreement, including
21 pleading guilty on behalf of the company, and shall also state that
22 all legal formalities for such authorizations have been observed.

23                ORGANIZATIONAL CHANGES AND APPLICABILITY

24      7.    This agreement shall bind defendant, its successor entities
25 (if any), and other person or entity that assumes the liability
26 contained herein ("successors-in-interest").  Defendant, or its
27 successors-in-interest, if applicable, shall provide the USAO and the
28 United States Probation Office for the Central District of California

1  with immediate notice of any name change, business reorganization,
2  sale or purchase of assets, divestiture of assets, or similar action
3  impacting its ability to pay the fine or affecting this agreement.
4  No change in name, change in corporate or individual control,
5  business reorganization, change in ownership, merger, change of legal
6  status, sale or purchase of assets, or similar action shall alter
7  defendant's responsibilities under this agreement.  Defendant shall
8  not engage in any action to seek to avoid the obligations and
9  conditions set forth in this agreement.

10  ## NATURE OF THE OFFENSE

11  8.    Defendant understands that for defendant to be guilty of
12  the crime charged in the single-count Information, that is, Causing
13  and Aiding and Abetting a Failure to Maintain an Accurate Oil Record
14  Book while in United States Waters, in violation of 33 U.S.C. §
15  1908(a), 33 C.F.R. §§ 151.25(d), (j), (h), 18 U.S.C. § 2, the
16  following must be true: by and through the acts of its agents and/or
17  employees, defendant knowingly failed to maintain, and aided and
18  abetted and willfully caused others to fail to maintain, an accurate
19  Oil Record Book while in United States waters in which all
20  discharges, disposals, and transfers of bilge water that accumulated
21  in machinery spaces were required to be recorded.

22  ## PENALTIES

23  9.    Defendant understands that the statutory maximum sentence
24  that the Court can impose for a violation of 33 U.S.C. § 1908(a), 33
25  C.F.R. §§ 151.25(d), (j), (h) is: a five-year period of probation; a
26  fine of $500,000 or twice the gross gain or gross loss resulting from
27  the offense, whichever is greatest; and a mandatory special
28  assessment of $400.

SUSPENSION, REVOCATION, AND DEBARMENT

10.   Defendant understands that if defendant holds any regulatory licenses or permits, the convictions in this case may result in the suspension or revocation of those licenses and permits. The USAO makes no representation or promises concerning suspension or debarment of defendant from contracting with the United States or with any office, agency, or department thereof.   Suspension and debarment of organizations convicted under various federal environmental and criminal statutes is a discretionary administrative action solely within the jurisdiction of the federal contracting agencies.   Defendant understands that unanticipated collateral consequences such as this will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

11.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.   Defendant and the USAO agree to the statement of facts attached hereto as Exhibit B and incorporated by reference herein, and agree that the statement of facts is sufficient to support a plea of guilty to the charge described in this agreement as well as the sentence, conditions of probation, and fine specified in this agreement.   The attached statement of facts is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING AGREEMENT

12.   Defendant and the USAO agree and stipulate that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable in determining

7

1  the fine for an organization violating 33 U.S.C. § 1908(a) and 33
2  C.F.R. §§ 151.25(d), (h), but all other sections of Chapter 8 of the
3  U.S.S.G. are applicable in this case, including the provisions
4  regarding probation.  Defendant understands that in determining
5  defendant's sentence, the Court is also required to consider the
6  factors set forth in Title 18, United States Code, Sections 3553(a)
7  and 3572, including the kinds of sentences and sentencing ranges
8  established under the Sentencing Guidelines.

9       13.  Pursuant to Chapter 8 of the Sentencing Guidelines and the
10  factors set forth in Title 18, United States Code, Sections 3553(a)
11  and 3572, including the nature and circumstances of the offense and
12  the history and characteristics of the defendant, the need for the
13  sentence imposed, the need for the sentence imposed to reflect the
14  seriousness of the offense, to promote respect for the law, to
15  provide just punishment for the offense, to afford adequate
16  deterrence to criminal conduct, and to protect the public from
17  further crimes of the defendant, the parties agree that defendant
18  shall be sentenced as follows:

19       a.   Probation:  Defendant shall be sentenced to probation
20  for a term of thirty (30) months with conditions to be fixed by the
21  Court.  The parties further agree that defendant may petition the
22  Court for early termination of probation, and, if defendant has
23  completed twenty-four (24) months of probation in full compliance
24  with the terms imposed, the government will not unreasonably object
25  to such request.

26       b.   Environmental Compliance Program:  Defendant shall
27  timely implement a compliance program in accordance with Exhibit C,
28  which shall be incorporated as additional conditions of defendant's

8

1 probation.

2       c.  Criminal Fine:  Defendant shall pay a total criminal
3 fine of $500,000.  The criminal fine shall be paid by certified check
4 or wire transfer to the Clerk of the United States District Court for
5 the Central District of California within five (5) business days of
6 the date defendant executes and delivers this Agreement to the USAO.
7 Confirmation of the completed payment shall be provided to the USAO.

8       d.  Special Assessment:  Defendant shall pay a total
9 special assessment of $400.

10    14.  Pursuant to Federal Rule of Criminal Procedure
11 32(c)(1)(A)(ii), the parties request that the Court waive the
12 preparation of a presentence report in this matter.  The parties
13 further request that the Court sentence defendant at the time the
14 guilty plea is entered.

15    15.  In the event that the Court defers acceptance or rejection
16 of this specified sentence plea until it has reviewed the presentence
17 report in this case pursuant to Federal Rule of Criminal Procedure
18 11(c)(3)(A), both defendant and the USAO are free to: (a) supplement
19 the facts stipulated to in this Agreement by supplying relevant
20 information to the United States Probation Office and the Court; and
21 (b) correct any and all factual misstatements relating to the
22 calculation of the sentence.

23 <div align="center">WAIVER OF CONSTITUTIONAL RIGHTS</div>

24    16.  Defendant understands that by pleading guilty, defendant
25 gives up the following rights:

26       a.  The right to persist in a plea of not guilty.
27       b.  The right to a speedy and public trial by jury.
28       c.  The right to be represented by counsel at trial.

<div align="center">9</div>

d. Defendant understands, however, that, defendant retains the right to be represented by counsel at every other stage of the proceeding.

e. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

f. The right to confront and cross-examine witnesses against defendant.

g. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

h. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

i. Any and all rights to pursue any affirmative defenses, Fourth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

17. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18. Defendant agrees that, provided the Court imposes the sentenced specified in paragraph 13 above, defendant gives up the right to appeal any portion of the sentence.

19.    The USAO agrees that, provided the Court imposes the sentence specified in paragraph 13 above, the USAO gives up its right to appeal any portion of the sentence.

<div align="center">RESULT OF WITHDRAWAL OF GUILTY PLEA</div>

20.    Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant (i) agrees that the agreed-to factual basis set forth in paragraph 11 and Exhibit B, and any evidence derived from such factual basis, shall be admissible against defendant in any such action against defendant and any third-party; and (ii) defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the agreed-to factual basis set forth in paragraph 11 and Exhibit B, and any evidence derived from such factual basis, should be suppressed or are inadmissible; and (c) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such

<div align="center">11</div>

1  action, except to the extent that such defenses existed as of the
2  date of defendant's signing this agreement.

3  <center>EFFECTIVE DATE OF AGREEMENT</center>

4      21.  This agreement is effective upon signature and execution of
5  all required certifications by defendant, defendant's counsel, and an
6  Assistant United States Attorney.

7  <center>BREACH OF AGREEMENT</center>

8      22.  Defendant agrees that if defendant, at any time after the
9  signature of this agreement and execution of all required
10 certifications by defendant, defendant's counsel, and an Assistant
11 United States Attorney, knowingly violates or fails to perform any of
12 defendant's obligations under this agreement ("a breach"), the USAO
13 may declare this agreement breached.  For example, if defendant
14 knowingly, in an interview, before a grand jury, or at trial, falsely
15 accuses another person of criminal conduct or falsely minimizes
16 defendant's own role, or the role of another, in criminal conduct,
17 defendant will have breached this agreement.  All of defendant's
18 obligations are material, a single breach of this agreement is
19 sufficient for the USAO to declare a breach, and defendant shall not
20 be deemed to have cured a breach without the express agreement of the
21 USAO in writing.  If the USAO declares this agreement breached, and
22 the Court finds such a breach to have occurred, then:

23      a.   If defendant has previously entered guilty plea
24 pursuant to this agreement, defendant will not be able to withdraw
25 the guilty plea.

26      b.   The USAO will be relieved of all its obligations under
27 this agreement; in particular, the USAO: (i) will no longer be bound
28 by any agreements concerning sentencing and will be free to seek any

<center>12</center>

sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime including charges that the USAO would otherwise have been obligated to dismiss or not to criminally prosecute pursuant to this agreement.

c.    The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the agreed-to factual basis set forth in paragraph 11 and Exhibit B, and any evidence derived from the factual basis, should be suppressed or is inadmissible.

23.    Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the

13

1  extent that such defenses existed as of the date of defendant's
2  signing this agreement.

3              COURT AND PROBATION OFFICE NOT PARTIES

4       24.  Defendant understands that the Court and the United States
5  Probation Office are not parties to this agreement and need not
6  accept any of the USAO's sentencing recommendations or the parties'
7  agreements to facts or sentencing factors.  Defendant understands
8  that the Court will determine the facts, sentencing and will decide
9  for itself whether to accept and agree to be bound by this agreement.

10      25.  Defendant understands that both defendant and the USAO are
11 free to: (a) supplement the facts by supplying relevant information
12 to the United States Probation Office and the Court, (b) correct any
13 and all factual misstatements relating to the Court's Sentencing
14 Guidelines calculations and determination of sentence, and (c) argue
15 on appeal and collateral review that the Court's Sentencing
16 Guidelines calculations and the sentence it chooses to impose are not
17 error, although each party agrees to maintain its view that the
18 sentence referred to in paragraph 13 is consistent with the facts of
19 this case.  While this paragraph permits both the USAO and defendant
20 to submit full and complete factual information to the United States
21 Probation Office and the Court, even if that factual information may
22 be viewed as inconsistent with the facts agreed to in this agreement,
23 this paragraph does not affect defendant's and the USAO's obligations
24 not to contest the facts agreed to in this agreement.
25 ///
26 ///
27 ///
28

1    <u>NO ADDITIONAL AGREEMENTS</u>

2       26.  Defendant understands that, except as set forth herein,

3    there are no promises, understandings, or agreements between the USAO

4    and defendant or defendant's attorney, and that no additional

5    promise, understanding, or agreement may be entered into unless in a

6    writing signed by all parties or on the record in court.

7    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

8       27.  The parties agree that this agreement will be considered

9    part of the record of defendant's guilty plea hearing as if the

10   entire agreement had been read into the record of the proceeding.

11   AGREED AND ACCEPTED

12   UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
13   CALIFORNIA

14   NICOLA T. HANNA
     United States Attorney

15

16                                          September 4, 2019

17   ASHWIN JANAKIRAM                        Date
     Assistant United States Attorney

18

19

20                                          September 4, 2019

21   NAME: PROKOPIOS ILIOU                   Date

22

     TITLE: SOLE DIRECTOR/PRESIDENT

23

24   Authorized Representative of
     Defendant DIAS CONTAINER CARRIER S.A

25

26   ///

27   ///

28   ///

                         15

1

2

3

_____                    September 4, 2019

4   GEORGE M. CHALOS                           _____
    Attorney for Defendant                     Date
5   DIAS CONTAINER CARRIER S.A.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

1

## CERTIFICATION OF DEFENDANT

2    I have been authorized by defendant DIAS CONTAINER CARRIER S.A.
3  ("defendant"), to enter into this agreement on behalf of defendant.
4  I have read this agreement in its entirety.  I have had enough time
5  to review and consider this agreement, and I have carefully and
6  thoroughly discussed every part of it with the attorney for DIAS
7  CONTAINER CARRIER S.A. ("defendant's attorney").  I understand the
8  terms of this agreement, and I voluntarily agree to those terms on
9  behalf of defendant.  I have discussed the evidence with defendant's
10  attorney, and defendant's attorney has advised me of my rights, of
11  possible pretrial motions that might be filed, of possible defenses
12  that might be asserted either prior to or at trial, of the sentencing
13  factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing
14  Guidelines provisions, and of the consequences of entering into this
15  agreement.  No promises, inducements, or representations of any kind
16  have been made to me or defendant other than those contained in this
17  agreement.  No one has threatened or forced me or defendant in any
18  way to enter into this agreement.  I am satisfied with the
19  representation of defendant's attorney in this matter, and I am
20  pleading guilty on behalf of defendant because defendant is guilty of
21  the charges and wish to take advantage of the promises set forth in
22  this agreement, and not for any other reason.

23

24  _____     September 4, 2019
25                                          Date.
26  NAME: PROKOPIOS ILIOU

27  TITLE: SOLE DIRECTOR/PRESIDENT

28  Authorized Representative of
     Defendant DIAS CONTAINER CARRIER S.A

                         17

1

## CERTIFICATION OF DEFENDANT'S ATTORNEY

2       I am DIAS CONTAINER CARRIER S.A.'s attorney.  I have carefully

3  and thoroughly discussed every part of this agreement with my client.

4  Further, I have fully advised my client of its rights, of possible

5  pretrial motions that might be filed, of possible defenses that might

6  be asserted either prior to or at trial, of the sentencing factors

7  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8  provisions, and of the consequences of entering into this agreement.

9  To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  a guilty plea pursuant to this agreement.

16

17                                            September 4, 2019

18  GEORGE M. CHALOS                          Date
    Attorney for Defendant
19  DIAS CONTAINER CARRIER S.A.

20

21

22

23

24

25

26

27

28

18

1
2
3
4
5
6
7

Exhibit A

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No. 19-

11              Plaintiff,              I N F O R M A T I O N

12              v.                      [33 U.S.C. § 1908(a), 33 C.F.R.
                                        §§ 151.25 (a),(d), (j), (h):
13   DIAS CONTAINER CARRIER S.A.,       Failing to Maintain an Accurate
                                        Oil Record Book; 18 U.S.C. § 2:
14              Defendant.              Aiding and Abetting and Causing an
                                        Act to be Done]
15
16
17

18        The United States Attorney charges:

19        [33 U.S.C. § 1908(a); 33 C.F.R. §§ 151.25 (a), (d), (j), (h);

20                         18 U.S.C. § 2]

21   A.   INTRODUCTORY ALLEGATIONS

22        At all times relevant to this Information:

23        1.   The *M/V CMA CMG AMAZON* was a container ship bearing

24   International Maritime Organization ("IMO") Number 9706308 that was

25   built in 2015.  The ship was approximately 984 feet long and

26   approximately 96,424 gross tons.  The *M/V CMA CMG AMAZON* sailed under

27   the Liberian flag, was owned by DIAS CONTAINER CARRIER S.A.

28   ("defendant DIAS").

2.   Defendant DIAS contracted with Capital Ship Management Corp. ("Capital Ship") to manage and operate the *M/V CMA CMG AMAZON* such that the officers and crewmembers hired by Capital Ship to operate the AMAZON functioned as agents of defendant DIAS.

3.   The *M/V CMA CMG AMAZON* was equipped with pollution control equipment called an Oily Water Separator that was intended to remove oil from engine room bilge water before the filtered water was discharged overboard.

4.   All disposals of oil residues and discharges overboard or disposals otherwise of bilge water that had accumulated in machinery spaces were required to be fully and accurately recorded in the *M/V CMA CMG AMAZON's* Oil Record Book.

B.   FAILURE TO MAINTAIN AN ACCURATE OIL RECORD BOOK

5.   On or about January 11, 2019, in Los Angeles County, within the Central District of California and elsewhere, defendant DIAS, the Second Engineer, and other officers and crewmembers onboard the *M/V CMA CGM AMAZON*, a container ship greater than 400 gross tons, knowingly failed to maintain, and aided and abetted and willfully caused others to fail to maintain the Oil Record Book aboard the *M/V CMA CGM AMAZON* in which all disposals of oil residues and discharges overboard or disposals otherwise of bilge water that had accumulated in machinery spaces were required to be fully and accurately recorded.  Specifically, in or about November and December 2018, the Second Engineer and others acting within the course and scope of their employment and agency, with the intent to benefit, at least in part, defendant DIAS, their principal, knowingly failed to fully and accurately record, and aided and abetted and willfully caused others to fail to fully and accurately record, in the *M/V CMA CGM AMAZON's*

2

1  Oil Record Book, disposals and overboard discharges of oily water

2  from the engine room bilge wells, machinery spaces, and clean drain

3  tank, all in violation of 33 C.F.R. §§ 151.25 (a), (d), (j), and (h).

4

5                           NICOLA T. HANNA
                            United States Attorney
6

7

8                           BRANDON D. FOX
                            Assistant United States Attorney
9                           Chief, Criminal Division

10                          JOSEPH O. JOHNS
                            Assistant United States Attorney
11                          Chief, Environmental and Community Safety Crimes
                               Section
12
                            PAUL G. STERN
13                          Assistant United States Attorney
                            Environmental and Community Safety Crimes Section
14
                            ASHWIN JANAKIRAM
15                          Assistant United States Attorney
                            Major Frauds Section
16
                            ANDREW M. ROACH
17                          Assistant United States Attorney
                            General Crimes Section
18
                            TYLER A. STUTIN
19                          Special Assistant United States Attorney
                            Environmental and Community Safety Crimes Section
20

21

22

23

24

25

26

27

28

Exhibit B:

Stipulated Statement of Facts

The M/V CMA CMG AMAZON ("the AMAZON") is a container ship owned by DIAS CONTAINER CARRIER S.A. ("defendant") that was built in 2015 and assigned International Maritime Organization Number 9706308.  The ship is approximately 984 feet long, 96,424 gross tons, and sails under the authority of the Liberian Flag Administration.

Defendant contracted with Capital Ship Management Corp. ("Capital Ship") to operate the AMAZON such that the officers and crewmembers hired by Capital Ship to operate the AMAZON functioned as agents of defendant.  Several of these officers and crewmembers were responsible for various operations, maintenance, and work in the engine room on the AMAZON.  While acting in the course and scope of their employment on the ship, these agents would supervise and direct various subordinate crewmembers to operate certain machinery and perform various jobs.

In late 2018, at least one subordinate crewmember, acting at the request of at least one officer, knowingly transferred machinery space bilge water directly from the vessel's bilge wells to the vessel's clean drain tank using a portable pump and flexible hoses while at sea, thereby not using the prescribed method for discharging machinery space bilge water through the Oily Water Separator. Contents of the clean drain tank were periodically discharged to the sea.  The transfers of the bilge water from the bilge wells to the clean drain tank and the discharges from the clean drain tank directly to the sea were not recorded in the vessel's Oil Record Book.  All such transfers and discharges constitute disposals of bilge water that had accumulated in machinery spaces, which should

have been fully and accurately recorded in the Oil Record Book.  At least one individual knowingly failed to fully and accurately record these transfers and discharges in the vessel's Oil Record Book, and the omissions were intended, at least in part, to benefit defendant.

On or about January 11, 2019, the AMAZON called the port of Los Angeles.  While in United States waters, shipboard officers and crewmembers knowingly failed to maintain an accurate Oil Record Book, as transfers and/or discharges of bilge water that had accumulated in machinery spaces were knowingly omitted from the Oil Record Book.

Defendant has agreed to voluntarily accept criminal liability for the acts of its agents and/or employees as described in this factual basis, as the management of accumulated bilge water and associated record-keeping requirements is within the scope of the officers' and crewmembers' agency and/or employment.

# EXHIBIT C

## Agreed Upon Conditions of Probation

## ENVIRONMENTAL MANAGEMENT SYSTEM / COMPLIANCE PLAN

The following standards and requirements for an ENVIRONMENTAL COMPLIANCE PROGRAM (ECP) have been prepared pursuant to the Plea Agreement between **DIAS CONTAINER CARRIER S.A.** (hereinafter "**DIAS**") and the United States Attorney's Office for the Central District of California (hereinafter "Government" or "United States") filed in the United States District Court for the Central District of California. Compliance with all of the standards and requirements of the ECP is an essential term of the Plea Agreement.

The ECP includes various provisions to ensure that all vessels owned, operated, technically managed, manned and/or controlled by **DIAS** which call or may call at ports or places in the United Sates, comply with all maritime environmental requirements established under applicable international, flag state, and port state law, including, but not limited to the International Convention for the Safety of Life at Sea ("SOLAS"), the International Safety Management ("ISM") Code, the International Convention for Prevention of Pollution from Ships ("MARPOL") and all applicable Federal and state statutes and regulations including, but not limited to, the Ports and Waterways Safety Act ("PWSA"), the Act to Prevent Pollution from Ships ("APPS"), the Clean Water Act ("CWA"), and the Oil Pollution Act ("OPA"), and with the requirements of this agreement itself. The auditing requirements of this ECP apply to all vessels that are owned, operated, technically managed, or manned by **DIAS**, which may call at ports or places in the United States. As more fully set forth below, this ECP and its requirements will also apply to vessels that **DIAS** acquires or assumes management of during the period of probation.

The vessels currently owned, operated, technically managed, and/or manned by **DIAS** as of the date of signing of this ECP are:

M/V CMA CGM AMAZON – IMO #9706308

## A. APPLICABILITY/PURPOSE

(1) This ECP shall cover and apply to all **DIAS** operations, including all subsidiaries, affiliated business entities (owned wholly or partially by **DIAS**), involved in the operation of seagoing vessels calling in United States ports which are owned, operated, or managed by **DIAS** on the date of sentencing or at any time during the period of probation. It shall also include all persons working for **DIAS**, its subsidiaries, affiliated business entities, and any other individuals or organizations who are involved in the operation, maintenance, and repair of aforesaid seagoing vessels owned, operated, managed, or manned by **DIAS**, as direct employees or independent contractors on the date of sentencing or at any time during the period of probation, who are hereinafter referred to as the "Covered Personnel."

(2) This ECP is not intended to replace the ISM Code, or any other applicable international legal requirement or United States statute or regulation. The purpose of this ECP is to augment the requirements of existing law by increasing and improving inspections, reviews, and audits of **DIAS** owned, operated, or managed vessels, shore side facilities, and operations involving said vessels; increase training of all **DIAS** personnel involved with said vessels; develop and implement management and engineering controls to better manage, detect, and prevent environmental violations; and require periodic

1

reports to the United States Probation Office for the Central District of California, the United States Attorney's Office for the Central District of California, and the United States Coast Guard (collectively hereinafter "the United States") to ensure that **DIAS** is following the requirements of this ECP and that all of its vessels comply with all maritime environmental requirements established under applicable international, flag state, and port state law and all applicable Federal and state statutes and regulations, and that an effective environmental management system is in place to prevent recurrence of violations.

## B.   INCORPORATION

This ECP is incorporated into the Plea Agreement by reference, and compliance by **DIAS** with the terms of this ECP will be a Special Condition of defendant's probation. Failure by **DIAS** to comply with any part of this ECP, including but not limited to: (i) refusal to pay valid charges for the Independent ECP Consultant ("IC"); (ii) failure to provide the IC or other personnel, auditors, or inspectors the material support needed to achieve the objectives of this ECP; or (iii) failure to provide the IC complete unrestricted access to vessels, facilities, personnel, or non-privileged documents (except to the extent such access is inconsistent with the safety and security of a vessel and its crew), may be a basis on which the Government may move to revoke or modify defendant's probation.

## C.  RIGHT OF INSPECTION

**DIAS** understands that representatives of the U.S. Coast Guard may board, audit, or inspect vessels owned, operated, or managed by **DIAS** under this ECP at any time they are found within the jurisdiction of the United States, both pursuant to existing authority and pursuant to this ECP.

## D.  SELECTION OF CORPORATE COMPLIANCE MANAGER ("CCM") AND INDEPENDENT ECP CONSULTANT ("IC")

### CORPORATE COMPLIANCE MANAGER ("CCM")

(1) Within thirty (30) days of entry of the Plea Agreement, **DIAS** shall designate a senior corporate officer as Corporate Compliance Manager (hereinafter "CCM") who shall report directly to the President and/or Managing Director of **DIAS**. The CCM position will be filled by an individual(s) with a significant commercial vessel operational background who possesses the authority to ensure full implementation of this ECP, and who is thoroughly familiar with the requirements of this ECP, and domestic and international maritime environmental laws and regulations. The CCM shall be responsible for coordinating with the Independent ECP Consultant (hereinafter "IC"), as more fully described below, developing and implementing all of the procedures and systems required herein, establishing implementing training programs for officers and crew of vessels operated by **DIAS**, and ensuring that reviews, audits, and surveys are carried out as required, and ensuring that documents are properly maintained and that reports are made on a timely basis to the IC and the United States. All reports required under this ECP shall be reviewed by the CCM and signed under penalty of perjury.

(2) **DIAS** shall provide the name of the CCM to the United States.

    a.  The IC, as more fully described below, shall develop and implement all of the procedures and systems required herein, establish and implement training programs for the officers and crew of **DIAS** owned, operated, or managed vessels, ensure that reviews, audits, and surveys are carried out as required, and ensure that all documents are properly maintained and that reports are made on a timely basis to the IC and the United States.

    b.  All reports required under this ECP shall be prepared by the IC and signed under penalty of perjury.

(3) **DIAS** shall establish a procedure and reporting system that requires and enables all Covered Personnel to notify the CCM of all violations of any applicable environmental requirements or other requirements of this ECP, and cooperate fully with the United States in carrying out their reviewing, auditing, and oversight functions required by applicable law and this ECP.

**DIAS** agrees to establish a procedure that makes failure to notify the CCM of any violations of any applicable environmental requirements and failure to cooperate fully with the United States in carrying out their auditing and oversight functions required by applicable law and this ECP, grounds for dismissal.

**DIAS** agrees not to retaliate against any Covered Personnel making any such report.

(4) The CCM shall be authorized to access all records and personnel regarding all vessels subject to the ECP for the purpose of ensuring compliance with the ECP. The CCM shall be authorized to implement all requirements of the ECP on all vessels subject to the ECP. The CCM shall ensure that audits and surveys are carried out as required, that all documents are properly maintained, and that reports are made on a timely basis to the U.S. Probation Office and the designated representative of the U.S. Coast Guard, and **DIAS**.

**CCM Responsibilities:**

(a)  Development and Maintenance of Effective Training Programs

To the extent not already completed, the CCM will be responsible for developing training programs to educate and train **DIAS** employees of the requirements of the ECP, the policies and procedures for complying with the ECP, and the possible consequences to **DIAS** and to individuals for failure to comply with environmental laws.

Provide environmental consultants and contractors of **DIAS** with documents and training to make them aware of the ECP.

(b)  Auditing and Compliance Assessment

Ensure that the IC conducts the review and audits required by the ECP and ensure that the required reports are prepared.

(c)  Fleet Reviews – For the M/V CMA CGM AMAZON and any Vessels Acquired by **DIAS**

Supervise annual overall reviews of the environmental compliance programs and focused reviews of key environmental areas to promote the adoption of best practices.

(d)  Reporting of Non-Compliance by Covered Personnel

Establish a means by which Covered Personnel may report (anonymously if the individual so desires) issues of non-compliance with this ECP and any other procedure, policy, or regulation associated with environmental protection.

## INDEPENDENT ECP CONSULTANT AND ENVIRONMENTAL AUDITS

(1)  Within forty-five (45) days of sentencing, **DIAS** shall nominate three (3) candidates for the IC that meet the qualifications below to conduct an Initial Environmental Review, and a Report of Findings for all **DIAS** operations as defined below. The United States will notify **DIAS** in writing specifying which IC is acceptable. If none of the proposed candidates are acceptable, **DIAS** will supply an additional candidate. The United States' acceptance shall not be unreasonably withheld.

(2) Qualified candidates for the IC position must have expertise and competence in the regulatory programs under U.S. and international environmental laws, and have expertise and competence in waste stream evaluation, monitoring, and control technologies, with a primary emphasis on engine room and machinery space operations, used by **DIAS** to achieve and maintain compliance with respect to **DIAS** seagoing vessels. The IC shall also have sufficient expertise and competence to assess whether **DIAS** has an adequate Environmental Management System ("EMS") in place to assess regulatory and ECP compliance, to correct for non-compliance, and to prevent future non-compliance. **DIAS** and the United States acknowledge that the functions of the IC may, by mutual agreement, be fulfilled by one or more individuals.

(3) The IC must not directly own any stock in **DIAS**, any of its subsidiaries, affiliated business entities (owned wholly or partially by **DIAS**) or any agents of **DIAS**, and must have no other direct financial stake in the outcome of duties conducted pursuant to this Plea Agreement. The IC must be capable of exercising the same independent judgment and discipline that a certified public accounting firm would be expected to exercise in auditing a publicly held corporation. If **DIAS** has any other contractual relationship with the IC, both **DIAS** and the IC shall disclose to the United States such past or existing contractual relationships.

(4) If the United States determines that the proposed IC does not reasonably meet the qualifications set forth in the previous paragraphs, or that past or existing relationships with the IC would affect the IC's ability to exercise the independent judgment and discipline required to conduct the ECP review and evaluation, such IC shall be disapproved and another IC shall be proposed by **DIAS** within thirty (30) days of receipt by **DIAS** of the United States' disapproval.

(5) During the first year of probation, the IC shall conduct an Initial Environmental Review of **DIAS** operations and **DIAS'** seagoing vessels that may call upon a U.S. port during the period of probation. During the thirty (30) month period of probation, the one vessel listed above shall be  audited twice. Accordingly, during the first year of probation, the vessel will be audited; any vessels  acquired by **DIAS** after the signing of this ECP will be audited in such a manner as to allow audits while  the vessels are in port or while the vessels are underway and operating on voyages of short duration (3-4  days or less). **DIAS** and the IC shall coordinate the underway inspections to accommodate, as much as  practicable, vessel operations and schedules.

The Initial Environmental Review shall be performed to ascertain and evaluate various aspects of **DIAS** vessels: their systems, equipment, and components; current practices whether documented or not; and the knowledge, skills, and abilities of ship and shore-side personnel as they relate to the requirements of this ECP, and other maritime environmental protection requirements.

The IC shall also conduct a second round of audits for the vessel(s) under the same  circumstances as in the initial review (*i.e.*, the M/V CMA CGM AMAZON will be audited, and any later  acquired vessels will be audited while in port or while underway on voyages of short duration during the  second year of probation.

(6) The Initial Environmental Review may be considered as a discovery action in that its purpose is to review all areas of the operations that may impact various elements of pollution prevention and environmental protection. It will exceed a typical SMS audit in scope and will be used to determine practices, procedures, and equipment conditions not typically documented during a routine inspection by the classification society, port, or flag state. The results of the Initial Environmental Review will be used to shape and revise the EMS established by this ECP.

(7) The Initial Environmental Review shall meet the following specific requirements:

(a) It shall assess all waste streams developed from any system, equipment, and components found in each machinery space on board **DIAS** vessels. This will include observation and documentation describing the leakages apparent on each system that can contribute to bilge loading. The audit will determine the state and quantify leakages stemming from:

    (i)        all pump and valve seals and glands during operation,
    (ii)      all piping systems, flanges, gaskets, fittings, and joints,
    (iii)     all equipment casings such as main and auxiliary engines, and reduction gears,
    (iv)    operation of engines, boilers, incinerators, and evaporators, and
    (v)     all other mechanical components found aboard **DIAS** vessels

(b) It shall assess the performance and ability of the oily water separator ("OWS"), all installed oil content meters ("OCMs"), incinerator, and any other pollution prevention equipment to handle the quantities and types of wastes developed during normal operations. To assess the OWS, the IC shall conduct an operational test using the normal bilge holding tank or bilge well supply as would be used in normal operations. The bilge holding tank or bilge well must not be diluted. The OCM fifteen (15) parts per million sensor alarms must not be defeated with the use of fresh water to bypass the sensor and/or undermine: (1) the proper function of the OCM sensor; (2) proper filtration of oily mixtures; and (3) OCM alarms that serve to prevent an overboard discharge. It will include an evaluation of the capacities for all tanks or containers associated with the management of oily residues (sludge), bilge water, other oily wastes, or other wastes.

(c) It shall assess document tracking, maintenance and repair, and modification of all pollution prevention equipment, and notification of equipment failure to the CCM or other shore-side personnel.

(d) It shall assess each vessel's crew and its ability to handle the operational, maintenance, and repair workloads in maintaining all systems, equipment, and components on board in order to minimize waste stream development, and in particular assessing whether the size of the engineering crew is adequate for the customary workloads.

(e) It shall assess the adequacy of the EMS, current practices, and equipment, including storage capabilities used to manage shipboard solid wastes generated in all areas of the vessel, and the effectiveness of garbage management plans.

(f) It shall assess the machinery spaces for vulnerabilities to unauthorized ways to dispose of waste, and document any methods or vulnerabilities so identified.

(g) It shall assess the adequacy of the vessel's crew members, as appropriate, to maintain the following records:

(i)      Oil Record Book (Part I) for all vessels;
(ii)     Oil Record Book (Part II) where applicable;
(iii)    Engine Room alarm records;
(iv)     Electronic tank sounding logs;
(v)      Personnel work records and lists;
(vi)     Maintenance records;
(vii)    Vendor service records related to pollution prevention equipment or operations;
(viii)   Oily bilge water and oil residues (sludge) receipts;
(ix)     Deck Log;
(x)      Garbage Record Book;
(xi)     Oil-to-sea equipment interface records;
(xii)    Hazardous waste manifests;
(xiii)   Solid waste discharge receipts;
(xiv)    OCM calibration records;
(xv)     Training records;
(xvi)    Inspection Documents; and
(xvii)   EMS or audit documents.

(h) It shall assess and evaluate documentation containing the certifications that each vessel's officers understand the requirements of this ECP and shall require signed statements by all vessel officers, including but not limited to the Chief Engineer, the Second Engineer, the Third Engineer, the Fourth Engineer, as well as all other engine room crew, attesting that they understand that false entries in the Oil Record Book for machinery space operations is a violation of law and the use of any method or system to bypass the OWS pollution prevention equipment, leading to an overboard discharge that is not properly recorded, is a violation of law.

(i) It shall assess the policy, procedures, and current practices associated with the Master, Chief Officer, and Chief Engineer's capability to communicate regarding issues relating to the EMS with shore-side personnel including the CCM, vessel superintendents, and designated persons, and shall review such communications.

(j) It shall assess through interviews of crewmembers and review of records the adequacy of shipboard pollution prevention and environmental protection training and meetings involving discussions of operations relating to environmental protection.

(k) It shall assess the current practices and procedures used on the vessel and ashore to track crewmember environmental training, and the availability of, and access to, training resources on board and ashore.

(l) It shall assess the adequacy of reference materials related to each environmental procedure required by this ECP, the EMS, and other marine environmental protection requirements.

(m) It shall assess the adequacy of existing methods for Covered Personnel to report environmental concerns and evaluate whether a reporting individual may remain anonymous; further it shall review processes for handling reports of environmental concerns made by crew members and shore-side personnel; it shall also evaluate the adequacy of signage and instructional material posted aboard the vessel relevant to the availability and use of the existing reporting methods.

(n) It shall assess the policy, procedures, and current practices used to manage the existing seal tracking and valve locking program, including the storage of seals and preventing the use of duplicate seals;

(o) It shall assess the policy, procedures, current practices, and equipment related to oil transfer procedures, including bunkers, bilges, and sludge discharges, and the conditions of hoses, connections, and transfer equipment, as well as methods in place to prevent illegal discharges via the shore connections.

(p) It shall assess continual improvement systems, including procedures for ensuring that **DIAS** policy and procedures reflect updates to MARPOL and other marine environmental protection requirements.

(8) At the conclusion of the Initial Environmental Review, but in no event later than twelve (12) months following the appointment date of the IC, the IC shall prepare a Report of Findings. If the IC believes that additional time is needed to analyze available information, or to gather additional information, or to complete the Report of Findings, **DIAS** may request that the Government grant the IC such additional time, as required, which request shall not be unreasonably denied. If necessary, the Government may grant additional time in thirty (30) days increments for completion of the Report of Findings. The Report of Findings shall be provided to **DIAS** and the United States. Based on the Report of Findings, **DIAS** shall, to the extent not already done, develop an Environmental Management System ("EMS") and Manual as described below. The IC shall conduct a second audit using the above criteria during the second year of probation in order to ascertain if **DIAS** has continued to implement the EMS system and whether the vessel(s) are in compliance with environmental requirements.

## C. MASTER AND CHIEF ENGINEER

(1) The Master of each **DIAS** vessel subject to this ECP shall ensure that prompt reports are made to the CCM of any non-compliant condition of any **DIAS** vessel that calls upon any port or place in the United States or sails into any waters under the jurisdiction of the United States. The Master of each **DIAS** vessel subject to this ECP will also maintain all documents required under this ECP, such as crew training records, and will make these records available to the United States Coast Guard upon request.

(2) The Chief Engineer on board all vessels subject to this ECP shall perform the following duties regarding this ECP: (1) to daily measure, monitor, and manage shipboard generated wastes; and (2) to report to the CCM and cooperate with **DIAS** to resolve environmental concerns, such as inoperative or ineffective pollution prevention equipment and document all efforts to do so in a log that is available for review and audit at all times.

## D. ENVIRONMENTAL MANAGEMENT SYSTEM ("EMS")

(1) The CCM shall be responsible for establishing an EMS to the extent not already done or may be necessary. To the extent possible, the EMS shall be based upon the ISO 14001:2004 standards. The EMS shall include the following core requirements:

(2) Environmental Policy

The EMS should be based on a documented and clearly communicated policy. This policy should set out the **DIAS** commitment towards a cleaner marine environment. It should include:

    (a)    provision for compliance with environmental requirements;
    (b)    commitment to continuous improvement in environmental performance, including those areas required by this ECP;
    (c)    commitment to pollution prevention that emphasizes source reduction, to include funding and human resources necessary to train employees, effectively maintain and repair systems,

        equipment, and components found in machinery spaces of vessels;

(d)     commitment to continuous reduction of environmental risks; and

(e)     commitment to sharing information with external stakeholders on environmental performance.

(3) Communication of Environmental Requirements

The EMS must provide a means to identify, explain, and communicate all environmental requirements, and any additional best practices or industry norms which **DIAS** may choose to adopt, to **DIAS** Covered Personnel, and other vendors, technicians, or non-crewmembers engaged in waste stream management of **DIAS** operated vessels. The EMS must also specify procedures for incorporating changes in operations or environmental requirements into the communication plan.

(4) Structure, Responsibility, and Resources

**DIAS** will ensure that it has sufficient personnel and other resources to meet its objectives and targets. The EMS will include documentation explaining the steps for achieving those objectives and targets. The EMS will include descriptions of the roles and responsibilities of all Covered Personnel, as well the accountability of the Covered Personnel with respect to meeting the requirements of this ECP and the EMS.

(3) Corrective and Preventive Action and Emergency Procedures

**DIAS**, through its EMS, will establish and maintain documented procedures for preventing, detecting, investigating, and promptly initiating corrective actions, and reporting (both internally and externally), any occurrence that may affect its ability to achieve the EMS objectives and targets, and for promptly initiating corrective actions.

Such measures must focus particular attention on incidents that may have an effect on compliance with environmental requirements, as well as on environmental performance in regulated and non-regulated areas, including requirements of this EMS, this ECP, or other marine environmental protection requirements. Examples of such situations include incinerator or OWS malfunctions, overflows of tanks within machinery spaces, fuel oil, lube oil, saltwater line failures, operator errors, and other accidental releases.

The EMS must also establish documented procedures for mitigating any adverse impacts on the environment that may be associated with accidents or emergency situations and for ensuring that similar incidents are avoided. The EMS must include procedures for tracking any preventive and corrective actions that are taken. If the environmental violation or incident resulted from a weakness in the system, the EMS should be updated and refined to minimize the likelihood of such problems recurring in the future. The EMS should also, to the extent possible, provide for the testing and evaluation of emergency procedures.

(4) Training, Awareness, and Competence

The EMS shall establish procedures to ensure that all Covered Personnel have been trained and are capable of carrying out their responsibilities under this ECP and the EMS. In particular, the training should highlight means to enhance the ability of such personnel to ensure compliance with environmental requirements and voluntary undertakings, the requirements of this ECP and other marine environmental protection requirements. In addition, the EMS shall provide for the proper briefing and supervision of vendors, technicians, and other non-crewmembers whose job responsibilities could affect the ability of **DIAS** to comply with this ECP and achieve the EMS objectives and targets.

(5) Organizational Decision-Making and Planning

The EMS must describe how these various management system elements will be integrated into **DIAS** overall decision-making and planning, in particular, decisions on capital improvements, training programs, and vessel operations, maintenance, and repair activities.

(6) Document Control

The EMS must establish procedures to ensure maintenance of appropriate documentation relating to its objectives and targets and should also ensure that those records will be adequate for subsequent evaluation and improvement of the operation of the EMS. Additionally, it will document the **DIAS** state of compliance with marine environmental protection requirements and the requirements of this ECP. All records will be maintained for the period required under this ECP and made available upon request to the IC and port and flag state personnel.

(7) Continuous Evaluation and Improvement

The EMS must include methods to perform periodic, documented, and objective auditing of performance in achieving these objectives and targets and on how well the EMS assists **DIAS** in achieving those objectives and targets. This requirement is independent from the auditing requirements detailed elsewhere in this ECP. The goal of these internal audits and reviews will be to allow management to continuously monitor and access vessel systems, equipment, and components, and the ability and proficiency at which vessel crewmembers and personnel ashore comply to the policies and procedures established by this EMS.

(8) Additional Requirements

The EMS will identify an ongoing process for assessing operations for the purposes of preventing and controlling or minimizing waste stream development and releases, ensuring environmental protection, and maintaining compliance with a primary emphasis on marine engineering, vessel engine room and machinery space systems, equipment, and components, and any shipboard systems having oil-to-sea interfaces. This must include a process by which a decision can made whether to take a vessel out of service for an environmental discharge related repair such as when caused by leaking stern tubes, thrusters, or other equipment.

The EMS will include organization charts, as appropriate, that identify shore-side and vessel individuals having environmental performance, risk reduction, and regulatory compliance responsibilities. The EMS will list responsibilities of shore-side vessel operational and technical management to report information related to environmental releases or inadequate performance of environmental pollution protection equipment, system casualties resulting in internal spills, excessive waste development and leaking equipment with oil-to-sea interfaces.

The EMS will promote non-retaliatory practices and ensure that employees are not punished or otherwise suffer negative consequences for reporting violations of environmental laws, regulations, or policies. The EMS will also describe potential consequences for departure from specified operating policies and procedures, including possible termination of employment and liability for criminal/civil/administrative penalties as a result of non-compliance.

The EMS will make compliance with environmental policies of this ECP, the EMS, and other marine environmental protection requirements a positive factor in performance evaluations, and failure to comply a basis for discipline, which may range from counseling or retraining up to an adverse performance evaluation and/or dismissal.

**E. ENVIRONMENTAL MANAGEMENT SYSTEM MANUAL**

(1) Within six (6) months of receiving the Report of Findings on the Initial Environmental Review from the IC, **DIAS** shall prepare an EMS Manual, which shall describe and document the EMS and contain any additional EMS implementation schedules as needed to ensure complete compliance in all operations and procedures. If **DIAS** believes that additional time is needed to analyze available information or to gather additional information to prepare the EMS Manual, **DIAS** may request that the Government grant it such additional time as needed to prepare the EMS Manual, which request shall not be unreasonably denied. If necessary, the United States may grant additional time in thirty (30) day increments for completion of the EMS Manual.

(2) **DIAS** shall submit a proposed final EMS Manual to the CCM and the United States immediately upon its completion. The United States shall provide comments on the proposed EMS Manual within ninety (90) days of receipt unless additional time for review is requested in writing. **DIAS** shall submit a supplement to the EMS or a written response, as appropriate, within sixty (60) days of receipt of the comments. The EMS is subject to final approval from the United States, which approval shall not be unreasonably withheld.

(3) All elements of the EMS Manual shall be fully implemented no later than three (3) months following final approval by the United States. Upon receipt of final approval, **DIAS** shall immediately commence implementation of the EMS in accordance with the schedule contained in the EMS Manual. **DIAS** shall submit reports to the designated representative of the Coast Guard and the Environmental and Community Safety Crimes Section of the United States Attorney's Office for the Central District of California beginning no later than one-hundred twenty (120) days following the publication of the Report of Findings by the IC, regarding the status of the development and implementation of the EMS and the results of the review and evaluation of **DIAS** operations or audits conducted pursuant to the EMS. These reports shall be made on an annual basis.

**F. FINAL EMS/ECP COMPLIANCE AUDIT**

(1) Beginning no later than twelve (12) months prior to the end of probation, **DIAS** shall arrange for, fund, and complete a second/Final EMS/ECP Compliance Audit of the CMA CGM AMAZON and all other vessels subject to this ECP, while those vessels are in port or are underway and operating on voyages of short duration (3-4 days or less). During this final audit phase, **DIAS** shall advise the IC of any issue that comes to its attention that adversely impacts **DIAS'** compliance with all applicable laws and regulations and the EMS/ECP.

(2) The Final EMS/ECP Compliance Audits shall be conducted, as much as is practicable under the circumstances, in accordance with the principles set forth in ISO 9000 and ISO 14011, using ISO 14012 as supplemental guidance. The IC shall assess conformance with the elements covered in the Initial Environmental Review, with all additional requirements presented in the EMS and with the additional requirements of this plan. Designated Government representatives may participate in the audits as observers at Government expense. **DIAS** shall make timely notification to the Government regarding audit scheduling in order to make arrangements for observers to be present.

(3) The IC shall deliver each vessel's and facility's audit report to the appropriate company official upon completion. In addition, the IC will deliver an Audit Report to the U.S. Probation Office, designated representative of the U.S. Coast Guard, and Environmental and Community Safety Crimes Section of the United States Attorney's Office for the Central District of California, within thirty (30) days after the completion of each audit. If the IC believes that additional time is needed to analyze available information or to gather additional information, **DIAS** may request that the Government grant the IC such additional

10

time as needed to prepare and submit the Audit Report. If necessary, the Government may grant additional time in thirty (30) day increments for completion of the Audit Report. Should the Government or the United States Probation Office seek to revoke **DIAS'** probation based on the IC's failure to file a timely EMS/ECP Final Compliance Audit Report, **DIAS** shall have the right to contest the reasonableness of such revocation in the appropriate U.S. District Court.

(4) The Final EMS/ECP Compliance Audit Reports shall present the Audit Findings and shall, at a minimum, contain the following information:

>    (a) audit scope, including the time period covered by the audit;
>    (b) the date(s) the on-site portion of the audit was conducted;
>    (c) identification of the audit team members;
>    (d) identification of the company representatives and regulatory personnel observing the audit;
>    (e) the distribution list for the Final EMS/ECP Compliance Audit Report;
>    (f) a summary of the audit process, including any obstacles encountered;
>    (g) detailed Audit Findings, including the basis for each findings and any areas of concern identified;
>    (h) identification of any Audit Finding corrected or areas of concern addressed during the audit, and a description of the corrective measures and when they were implemented;
>    (i) certification by the IC that the Final EMS/ECP Compliance Audit was conducted in accordance with this document and general audit principles.

(5) Within sixty (60) days from completion of the Final EMS/ECP Compliance Audit of a particular facility or vessel, **DIAS** shall develop and submit to the United States, for review and comment, an A c t i o n Plan for expeditiously bringing **DIAS** into full compliance with all applicable laws and regulations  and the EMS/ECP Manual, if necessary. The Action Plan shall include the result of any root cause analysis, specific  deliverables, responsibility assignments, and an implementation schedule. **DIAS** may request that the   United States permit a brief extension of the time limit states above on a case by case basis. Such  permission shall not be unreasonably withheld.

(6) The Action Plan shall be reviewed by the United States, which shall provide written comments within thirty (30) days of receipt. After making any necessary modifications to the Action Plan based on the comments, **DIAS** shall implement the Action Plan in accordance with the schedules set forth therein. Within thirty (30) days after all items in the Action Plan have been completed, **DIAS** shall submit a written Action Plan Completion Certificate to the United States.

## G. NON-COMPLIANCE

(1)   This EMS/ECP does not in any way release **DIAS** from complying with any applicable international conventions and treaties, state or Federal statutes and/or regulations, the ISM Code, or other international maritime conventions or treaties and does not limit imposition of any sanctions, penalties, or any other actions available under those international conventions and treaties, state or Federal statutes and regulations, the ISM Code, or other international maritime safety conventions or treaties.

(2)   The EMS/ECP shall be part of the Plea Agreement and adherence to it will be a condition of probation. Failure to comply with any part of this EMS/ECP (including but not limited to refusal to pay valid and reasonable charges for the IC, and failure to provide the IC access to vessels, facilities, personnel, or documents) may be a violation of the Plea Agreement and may be grounds for the revocation or modification of **DIAS'** probation. Should the United States or the U.S. Probation Office seek to revoke or modify **DIAS'** probation based on **DIAS'** refusal to pay valid and reasonable charges for the IC and/or its failure to provide the IC access to vessels, facilities, personnel, or documents, and/or

11

as a result of any disagreement regarding any of the provisions of this EMS/ECP, **DIAS** shall have the right to contest the reasonableness of such revocation before the appropriate U.S. District Court.

## H. BOARD OF DIRECTORS

**DIAS** shall ensure that at least yearly its Board of Directors or equivalent governing structure receive and review reports from the CCM concerning the implementation of this EMS/ECP, including environmental compliance, EMS implementation, and manager, officer, and crew training. Copies of those portions of the meeting agendas and internal company reports concerning these items shall be included in the reports to the United States.

## I. TRAINING REQUIREMENTS

(1)   The CCM will be responsible for developing training programs to educate and train Covered Personnel. The CCM may personally conduct the trainings to ensure that the requirements of this section are met. The CCM will document the successful completion of the training program.

(2)   Training shall occur annually for all Covered Personnel and be performed by qualified instructors before an employee assumes his or her duties. The training shall consist of pertinent sections of this ECP, the EMS, and existing marine environmental protection requirements. The training shall include shipboard-related technical and practical information associated with pollution prevention and the operation, maintenance, and repair of pollution prevention equipment and systems, and be appropriate for the work responsibilities and department in which an employee works. The training must include discussion of the consequences to **DIAS** and its employees for failure to comply with the requirements of this ECP, EMS, and existing marine environmental protection requirements.

(3)   Where possible, a basic initial training program shall be provided to vessel employees currently on board vessels in an effort to promptly mitigate pollution risks and ensure environmental protection. However, such employees must receive training prior to returning to a vessel on a new contract.

(4)   Additionally, the training shall include instruction regarding:

> (a)  Explanation of the corporate environmental compliance structure, including the CCM and contact information.

> (b)  Comprehensive overview of this ECP, the EMS, and other marine environmental protection requirements.

> (c)  Importance of environmental policy compliance, and accurate and truthful recordkeeping.

> (d)  Sanctions and consequences for violations such as remedial training, suspension, termination, and civil and criminal liability.

> (e)  Avenues for anonymous reporting.

> (f)  Pollution prevention and minimization programs specifically as it relates to cargo, deck, and engine department procedures and operations.

> (g)  All requirements set forth in the Engineering section of this ECP.

(h) Position-specific training in the operation, maintenance, and repair of OWSs, OCMs, incinerators, and other pollution prevention equipment.

(i) Procedures for solid and hazardous waste segregation, storage, disposal, and reporting of releases.

(j) All other shipboard environmental protection-related procedures examined and described in the initial review.

(5) All new crewmembers hired to work on **DIAS** vessels subject to this ECP shall receive training within seven (7) days of beginning to work on board the vessel. **DIAS** shall maintain documentation on board each of its vessels verifying that all officers and crewmembers working on the vessel have received the required training. Such documentation shall be made available to the IC and the United States upon request.

(6) The Chief Engineer on board each **DIAS** vessel subject to this ECP shall prepare independent written verification that all engine room crewmembers have received the training required by this EMS/ECP. All engine room crewmembers shall sign and date a statement acknowledging completion of the training. This written verification, together with the signed acknowledgement, shall be completed semi-annually and maintained in the engine control room of each vessel.

## J. ENGINEERING REQUIREMENTS

(1) Unless otherwise stated, all of the requirements set forth below, if not in contravention of any classification society, treaty, or other flag state requirement, shall be implemented on the vessels covered under this ECP as soon as practicable, as determined by the CCM and not later than three (3) months from the date of sentencing.

(2) Bilge Main Cross-Connections

(a) Within thirty (30) days of sentencing, the CCM shall ensure that notification is provided to all **DIAS** vessel(s) regarding the prohibition against the non-emergency usage of cross connections from engine room bilge mains to the suction piping of larger pumps which may be referred to as the "fire and general service pump" or "fire, bilge and ballast" pump. The notification shall state that such usage is similar to bypassing the OWS equipment and is strictly prohibited, except in the case of an emergency.

(b) The deck plates above or near the locations of these cross connections or other interconnected systems and the valve bodies and associated hand wheels shall be painted international orange. A brightly colored sign with three inch letters shall be permanently fixed nearby, stating – "Bilge System Piping Crossover – Emergency Use Only."

(c) To prevent unauthorized usage of those valves, **DIAS** shall require that ECS seals be placed on such valves. The ECS Seal Log shall track any time a crossover to the bilge main is opened. If a valve is remotely operated from the engine control room, the associated push button or switch must be unable to be used without breaking an environmental seal.

(d) All other bilge suction valves not connected to the bilge main, and independent emergency suctions to the vessel's engine room bilges, like those which may be connected to sea water circulating pumps, shall be painted international orange on all vessels and labeled in a manner similar to "Emergency Bilge Suction - Emergency Use Only." The valve wheels will also have

13

a numbered and logged ECS seal capable of breakaway during emergencies, testing, and maintenance.

(3) Blank Flanges

(a) To prevent unauthorized connections within the engine room and machinery spaces of vessels, every blank flange connected to overboard piping, on systems such as salt water service, main engine raw water cooling or other systems, shall be permanently secured, removed, or fitted with numbered ECS seals through the flange bolts that will break when such bolts are removed, to prevent unauthorized connections and discharges. The ECS seals used shall be numbered and records kept in the ECS Seal Log. Alternative sealing methods, such as numbered foil-coated sticker seals for flanges, may also be used.

(b) The blank flange securing the bilge and sludge transfer system shore connection discharge valve at the discharge stations shall also require controls as part of the ECS.

(4) Tank Sounding Log

The CCM shall ensure the usage of Tank Sounding Log Books on all vessels. Engine room crewmembers shall be required to sound all waste, sludge, and bilge tanks associated with bilge water, oil wastes, or sludge during each watch for vessels having a manned engine room or twice daily for those having an unmanned engine room. The Tank Soundings Log shall be maintained in the engine control room and made available during all inspections and audits required by this agreement.

(5) Oil-to-Sea Interfaces

(a) **DIAS** shall have a standard system for monitoring equipment having oil-to-sea interfaces which relies on mechanical tension, hydrostatic pressure on the seal, and the surface tension between water and oil to minimize oil releases to the sea. Such interfaces may include stern tube bearings, stabilizers, controllable pitch propeller systems, maneuvering thrusters, propulsion pods, and similar equipment whereby the leakage of a sealing component may cause a loss of operating medium into the waters surrounding the vessel. Any replenishment of oil into the head tanks, operating systems reservoirs, or other receivers associated with this equipment shall be logged, regardless of the quantity involved. Ingress of water or drainage of water into or from these systems must also be logged, as far as practicable.

(b) Any extraordinary operations (such as frequent draining of fuel oil service and settling tanks, draining engine lube oil sump tanks of excessive water) shall be recorded in the official Engine Room Log, explained to the extent possible, and the records made available for inspection.

(6) Recordkeeping

All soundings and logs required by this section shall be maintained on board **DIAS** vessels for a period of three (3) years from the date of the final entry.

## K. CHANGES RELATED TO COVERED VESSELS

The parties recognize that during the term of probation, the number and identity of the vessels owned, operated, managed, manned, and/or controlled by **DIAS** that call on ports or places in the United States may increase or decrease. Any vessel, the operation, management, manning, or control of which is assumed by **DIAS**, and which calls on ports or places in the United States, shall be subject to the terms

14

and conditions of this EMS/ECP. Any vessel removed from the operation, management, manning, or control by **DIAS** or which stops calling in the United States shall be excluded from the scope of the EMS/ECP. **DIAS** agrees that it will immediately (but in no event later than twenty-one (21) days following a change) notify the United States of any change in name, flag of registry, recognized organization, ownership, or class society of any such **DIAS** vessels, to include the operation, management, manning, or control of which is assumed by **DIAS** and which calls on the United States. **DIAS** agrees that this EMS/ECP shall remain in effect for all of the aforesaid vessels regardless of changes in the vessels' flag of registry, recognized organizations, name, or class society, so long as the vessels are managed, operated, or manned by **DIAS**. **DIAS** shall notify the United States before any vessel is released from the requirements of the EMS/ECP due to a change in ownership, management, manning, or control, or if such vessels cease calling on ports or places in the United States. Any vessel that **DIAS** assumes operational, manning, or technical control of during the course of probation shall ensure that such vessel is audited in accordance with this ECP, and no later than seventy-five (75) days after assuming control of the vessel, provided the vessel's schedule permits, otherwise within a reasonable time thereafter.

## L. SELF-ENFORCEMENT

**DIAS** agrees that it will undertake and implement the necessary procedures to ensure that Covered Personnel diligently comply with this ECP and the associated requirements in their entirety. Among other efforts, **DIAS** shall ensure that its internal auditing procedures include the criteria established in this ECP.

## M. SCHEDULE

**DIAS** shall strictly comply with the requirements of this ECP, including the dates and periods mentioned herein. Should **DIAS** be unable to comply with any of the deadlines herein, **DIAS** shall promptly notify the United States and, where relevant, the IC, to request that the United States grant **DIAS** such additional time, as required.

## N. REPORTS

All reports, documents, and correspondence required under this EMS/ECP to be sent to the United States shall be sent to the following offices:

(a) United States Attorney's Office
Central District of California
Environmental and Community Safety Crimes Section
312 N. Spring Street, 13th Floor
Los Angeles, CA 90012
Attn: AUSA Mark Williams

(b) United States Probation Office
312 N. Spring Street, 16th Floor
Los Angeles, CA 90012

(c) United States Coast Guard Headquarters
Office of Investigations and Casualty Analysis (CG-INV-1)
Base National Capital Region
2703 Martin Luther King Jr. Ave SE, Stop 7501
Washington, D.C. 20593
Email: USCGECP@uscg.mil

    (d) Eleventh Coast Guard District
        Staff Judge Advocate (dl)
        Coast Guard Island Building 54-A
        Alameda, CA 94501

Defendant has read this ECP carefully and understands it thoroughly. Defendant enters into this ECP knowingly and voluntarily, and agrees to abide by its terms. By its signatures below, the corporate representative agrees that he/she is duly authorized by the corporation's board of directors or equivalent governing structure pursuant to the same notarized legal document filed in United States v. Dias Container Carrier, S.A., certifying that defendant company is authorized to enter into and comply with all of the provisions of this Plea Agreement.

DATED: September 4, 2019   **DIAS CONTAINER CARRIER, S.A.**

                By:

As counsel for defendant, we represent that we have discussed with our corporate client and its duly authorized representative(s) the terms of this EMS/ECP and have fully explained its requirements. We have no reason to doubt that our client is knowingly and voluntarily entering into this EMS/ECP.

DATED:   September 4, 2019

                GEORGE M. CHALOS
                CHALOS & Co, P.C.
                Counsel for DIAS CONTAINER CARRIER, S.A.

On behalf of the United States Attorney's Office for the Central District of California, the following agrees to the terms of the EMS/ECP:

DATED: 9/5/19

                PAUL G. STERN
                Assistant United States Attorney

16

**CERTIFICATE OF SERVICE**

I, GARY LETONA, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

PLEA AGREEMENT FOR DEFENDANT DIAS CONTAINER CARRIER S.A.

Service was:

| | |
|---|---|
| [] Placed in a closed envelope, for collection and interoffice delivery addressed as follows: | [X] Placed in a sealed envelope for collection and mailing via United States Mail addressed as follows: |
| | George M. Chalos, Esq.<br>CHALOS & Co, P.C.<br>55 Hamilton Avenue<br>Oyster Bay, NY 11771 |
| [X]By e-mail as follows:<br>gmc@chaloslaw.com | [] By federal express as follows: |

This Certificate is executed on September 5, 2019, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

_Gary E. Letona_
Gary Letona
Legal Assistant